IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUSAN RAGUSA**<br>**Philadelphia, PA** | : | **CIVIL ACTION NO.**<br>**5:18-cv-03362** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **LEHIGH UNIVERSITY**<br>**27 Memorial Drive West**<br>**Bethlehem, PA 18015** | : | |
| | : | |
| | : | |
| **Defendant** | : | |
| | : | |

## FIRST AMENDED CIVIL ACTION COMPLAINT

### I.    INTRODUCTION

Plaintiff, Susan Ragusa, brings this action against her former employer, Lehigh University ("Defendant"), alleging violations of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").[1]  Despite her consistently excellent performance over approximately eight (8) years of employment, Plaintiff was denied reasonable accommodations for her disabilities, namely endometrial cancer and adrenal insufficiency, subjected to a hostile work environment because of those disabilities, and ultimately terminated on account of her disabilities, her requests for reasonable

---

[1] Plaintiff files this First Amended Complaint pursuant to the Court's Order dated January 11, 2019.

accommodations, and her filing of internal complaints of disability discrimination. Plaintiff seeks all damages allowable under the law.

## II.    PARTIES

1.    Plaintiff, Susan Ragusa, is an individual and a citizen of the Commonwealth of Pennsylvania.

2.    Defendant, Lehigh University, is a non-profit educational institution registered to do business in the Commonwealth of Pennsylvania, with its principal office located at 27 Memorial Drive West, Bethlehem, PA 18015.

3.    Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

4.    At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

5.    At all times material hereto, Defendant acted as an employer within the meaning of the statutes that form the basis of this matter.

6.    At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes that form the basis of this matter.

## III.    JURISDICTION AND VENUE

7.    The causes of action that form the basis of this matter arise under the ADA, the FMLA, and the PHRA.

8.    The District Court has jurisdiction over Count I (ADA) and Count III (FMLA) pursuant to 28 U.S.C. §1331.

9.    The District Court has jurisdiction over Count II (PHRA) pursuant to 28

U.S.C. §1367(d).

10.     Venue is proper in the District Court under 28 U.S.C. §1391(b).

11.     On April 24, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.  This Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").  Attached hereto, incorporated herein and marked as Exhibit "A" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

12.     On May 7, 2018, the EEOC issued to Plaintiff a Notice of Right to Sue for the Charge of Discrimination.  Attached hereto, incorporated herein and marked as Exhibit "B" is a true and correct copy of the notice with personal identifying information redacted.

13.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.     FACTUAL ALLEGATIONS

14.     Defendant hired Plaintiff in 2008 as a Lighting Coordinator and Adjunct Professor.

15.     Over the course of her employment with Defendant, Plaintiff demonstrated dedication to her job and received positive feedback on her performance.

16.     During her 2014 performance review, Plaintiff's Supervisor, Josh Kovar ("Kovar"), told Plaintiff that she was an expert in her field, a strong, highly valued member of the technical services team, and a solid performer.

17.     In August 2015, Plaintiff was diagnosed with endometrial cancer, a disability

within the meaning of the ADA and PHRA.

18.     Plaintiff's co-workers and supervisors became aware of her diagnosis in or around August 2015.

19.     Plaintiff began to receive hormonal therapy treatment in September 2015.

20.     Shortly thereafter, Plaintiff's condition worsened and she realized that she could no longer work on a full-time basis.

21.     Accordingly, Plaintiff met with Linda Lefever ("Lefever"), Human Resources Associate, to inform Defendant that she could no longer work full-time.

22.     Lefever informed Plaintiff that she would be permitted to work a reduced schedule of thirty-five (35) hours per week, which Plaintiff proceeded to do until December 2015.

23.     In December 2015, Plaintiff's treating physician informed her that she was suffering from "adrenal insufficiency," a side effect of her cancer treatment that caused extreme fatigue, muscle weakness, and chronic pain.

24.     As a result of her deteriorating condition, Plaintiff requested and commenced an FMLA-approved medical leave of absence on or about January 4, 2016, which lasted until approximately April 2016.

25.     In April 2016, Plaintiff informed Kimberly Drey ("Drey"), Benefits Analyst, that she desired to return to work on a part-time basis.

26.     On or about May 26, 2016, Plaintiff provided Drey with a doctor's note stating that Plaintiff could return to work on a part-time basis, but could not climb or lift anything over twenty (20) pounds and would be limited to performing "desk work."

27.     After providing Drey with her doctor's note, Plaintiff returned to work on or

about May 27, 2016 and continued to work until on or about May 31, 2016.

28.     On or about May 31, 2016, Drey informed Plaintiff to go home and wait for Human Resources to permit her to return to work.

29.     On or about June 10, 2016, Defendant denied Plaintiff's request to return to work on a part-time basis with the restrictions set forth above.

30.     Specifically, Defendant informed Plaintiff that the Zoellner Arts Center, where Plaintiff performed her duties as a Lighting Coordinator, could not accommodate anything less than a full-duty return to work.

31.     In this regard, Defendant denied Plaintiff's request for a reasonable accommodation without taking any meaningful steps to engage Plaintiff in the interactive process. Without limitation:

a.     Defendant failed to gather or review any of Plaintiff's medical documentation to obtain an understanding of her medical condition or her need for a part-time schedule and sedentary work assignments; and

b.     Defendant failed to discuss potential alternative accommodations with Plaintiff.

32.     At or around the time of Plaintiff's attempt to return to work, there was a vacant teaching position available at Defendant for which Plaintiff was qualified, but not selected. Plaintiff was not considered for this position despite being equally qualified as the finalists.

33.     Upon information and belief, Defendant gave the vacant teaching positon to a non-disabled individual.

34.     On or about June 21, 2016 Plaintiff informed Defendant that she believed

Defendant was discriminating against her on account of her disabilities.

35.    On or about June 28, 2016, in light of Defendant's denial of Plaintiff's request for a part-time schedule, Plaintiff submitted a request to return to work on a full-time basis with certain restrictions (not lifting over 20 lbs, not climbing vertical ladders, not standing or walking for more than one hour at a time, and having a non-public space in which she could rest during the day).

36.    On or about June 29, 2016, Plaintiff contacted Karen Salvemini ("Salvemini"), Equal Opportunity Compliance Coordinator, and inquired about how to file a complaint of discrimination.

37.    Plaintiff's request to Salvemini was renewed on or about July 7, 2016 and again on or about July 20, 2016.

38.    Plaintiff eventually met with Drey, Lefever, and Judy Zavalydriga ("Zavalydriga"), Director of Employee Relations, on or about July 18, 2016 to discuss her request to return to work with restrictions.  On or about the same day, Plaintiff submitted to Defendant a third form from her doctor detailing her requested accommodations.

39.    Defendant failed to grant Plaintiff any reasonable accommodation during this meeting.   Rather, Defendant informed Plaintiff that yet another meeting had to be held with Kovar, Plaintiff's immediate supervisor.

40.    On or about July 22, 2016, Plaintiff submitted documentation to Defendant initiating a formal complaint of disability discrimination against Defendant.

41.    In the midst of her attempts to return to work over the summer months of 2016, Plaintiff was made aware that Defendant did not want her return to work and become another "Rachel,"  another employee of Defendant that was perceived as a

burden and a bad employee after being diagnosed with cancer.

42.     On or about August 4, 2016, Plaintiff met with Drey, Zavalydriga, Kovar, and Kovar's supervisor, Andrew Cassano ("Mr. Cassano"), Administrative Director, to discuss her desire to return to work with certain restrictions.

43.     Defendant agreed to allow Plaintiff to return to work on August 8, 2016 with the following restrictions and accommodations:

      a.     Working no more than forty (40) hours per week;

      b.     Limiting the amount to which she engaged in manual labor;

      c.     Devoting all of her time to her duties with Defendant's Zoellner Arts Center as opposed to her teaching responsibilities;

      d.     Having a space in the Zoellner Arts Center to periodically rest during the day; and

      e.     Having the opportunity to partially work from her home until a suitable resting space was located for Plaintiff at the Zoellner Arts Center;

44.     Following Plaintiff's return to work on August 8, 2016, Defendant failed to reasonably accommodate Plaintiff by failing and/or refusing to honor the agreed-upon accommodations set forth above.

45.     Without limitation:

      a.     Defendant required Plaintiff to work in excess of forty (40) hours per week;

      b.     Defendant required Plaintiff to engage in work which surpassed her physical limitations;

      c.     Defendant required Plaintiff to carry out her traditional teaching

responsibilities on top of her responsibilities at the Zoellner Arts Center;

d.  Defendant failed to provide Plaintiff with a location on campus in which she could obtain any meaningful rest during the day, forcing Plaintiff, on at least on occasion, to seek rest on a sofa in one of Defendant's public lobbies in front of several strangers;

e.  As a result of Defendant's refusal to grant Plaintiff a space on campus in which she could rest during the day, Plaintiff was forced to drive home during her lunch break to obtain the required rest, thus depriving Plaintiff of both the actual rest she required and a meaningful lunch break;

f.  Defendant criticized and reprimanded Plaintiff for working from home while a suitable resting place on campus was being determined; and

g.  Defendant criticized and reprimanded Plaintiff for not being able to climb a ladder

46.  Upon her return to work in August 2016, Defendant, without any justification, pressured Plaintiff to take a medical leave of absence and apply for long-term disability benefits.

47.  Upon her return to work in August 2016, Plaintiff was repeatedly and inexplicably excluded from meetings that she was traditionally and routinely included in prior to being diagnosed with a disability and requiring medical leave and workplace accommodations.

48.  Upon her return to work in August 2016, Plaintiff was deliberately excluded

from a high-profile project for which she had traditionally served as team lead prior to being diagnosed with a disability and requiring medical leave and workplace accommodations.

49.     The annual raise that Plaintiff received in August 2016 following her return to work was approximately $1,100.00 lower than the annual raises that she received in previous years.

50.     Upon her return to work in August 2016, Plaintiff was unjustifiably and inexplicably denied administrative support from her assistant for certain key events.

51.     Upon her return to work in August 2016, Plaintiff was told to "shut up" during a weekly staff meeting by her supervisor in front several co-workers.  Plaintiff was never spoken to in this manner by her supervisor prior to being diagnosed with a disability and requiring medical leave and workplace accommodations.

52.     On or about November 9, 2016, Defendant informed Plaintiff that she was being placed on an extended medical leave of absence.

53.     Specifically, Plaintiff was told that she would be given a time period of seven (7) days to apply for long-term disability benefits.

54.     Plaintiff was further told that if she did not apply for long-term disability benefits, or if her application was denied, that her employment would be terminated at the end of the seven (7) day period.

55.     Plaintiff applied for and was granted long-term disability benefits through approximately December 15, 2016.

56.     Upon the expiration of Plaintiff's long-term disability benefits, Plaintiff's employment with Defendant was terminated.

57.   At all times material hereto, Defendant unreasonably and intentionally delayed engaging Plaintiff in the interactive process.

58.   At all times material hereto, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations.

59.   By its actions set forth herein, Defendant engaged in a continuous and on-going practice of failing to provide Plaintiff with reasonable accommodations that would have allowed her to perform the essential functions of her job.

60.   At all times material hereto, Defendant failed to follow its own internal protocols and procedures for responding to and/or granting employee requests for medical leaves of absence and/or reasonable accommodations.

61.   Plaintiff's actual and/or perceived disabilities were motivating and/or determinative factors in Defendant's discriminatory and retaliatory treatment of Plaintiff as set forth herein, including subjecting her to a hostile work environment, failing to provide reasonable accommodations for her disabilities, terminating her employment, and failing to hire her into a vacant position for which she was qualified.

62.   Plaintiff's engaging in protected activity, including without limitation her requests for reasonable accommodations pursuant to the ADA and PHRA, requests for medical leave pursuant to the FMLA, PHRA, and ADA,  and her filing complaints of disability-based discrimination against Defendant, were motivating and/or determinative factors in Defendants' discriminatory and retaliatory treatment of Plaintiff as set forth in herein, including subjecting her to a hostile work environment, failing to provide reasonable accommodations for her disabilities, terminating her employment, and failing to hire her into a vacant position.

63.     Plaintiff was subjected to the harassment and discrimination set forth herein because of her disabilities and her requests for medical leave and/or workplace accommodations.

64.     The discriminatory, harassing, and retaliatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of her employment had been altered and that a hostile work environment existed.

65.     As a direct and proximate result of the discriminatory, harassing, and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

66.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, harassing, and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT I – ADA

67.     Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

68.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated the ADA.

69.     Defendant acted with malice and/or a reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

70.    As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

71.    Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

72.    No previous application has been made for the relief requested herein.

## COUNT II – PHRA

73.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

74.    By committing the foregoing acts of discrimination and retaliation, Defendant has violated the Pennsylvania Human Relations Act.

75.    As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

76.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

77.    No previous application has been made for the relief requested herein.

## COUNT III - FMLA

78.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

79.    At all times material hereto, Defendant employed fifty (50) or more individuals at or within 75 miles of Plaintiff's worksite

80.    Plaintiff worked for Defendant for at least 1,250 hours over the twelve (12)

month period of time immediately preceding her request for FMLA-protected medical leave in January 2016.

81.     Defendant violated Plaintiff's rights under the FMLA by terminating her employment for her use of and/or request for protected medical leave.

82.     Defendant knew and/or showed reckless disregard as to whether the foregoing acts were in violation of the FMLA, thereby warranting the imposition of liquidated damages.

83.     As a direct and proximate result of Defendant's violation of the FMLA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

84.     Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

85.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be   in violation of the ADA;

(b)     declaring the acts and practices complained of herein to be in violation of the FMLA;

(c)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(d)     enjoining and permanently restraining the violations alleged herein;

(e)     entering judgment against Defendant and in favor of the Plaintiff in an amount to be determined;

(g)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct, including back pay and front pay;

(h)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(i)     awarding punitive damages to Plaintiff;

(j)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and,

(k)     awarding Plaintiff reasonable attorneys' fees; and

(l)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief, providing restitution for past violations, and preventing future violations.

CONSOLE MATTIACCI LAW, LLC

Dated:  February 8, 2019          BY:

Daniel S. Orlow
1525 Locust St., 9th Floor
Philadelphia, PA 19102
(215) 545-7676

Attorney for Plaintiff,
Susan Ragusa

# Exhibit "A"

Page 3 o:

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA  ☒ EEOC | 336-2017-0487 |

| Pennsylvania Human Relations Commission | | |
|---|---|---|
| State or local Agency, if any | S.S. No. | 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 and EEOC |

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) | |
|---|---|---|
| Ms. Susan Ragusa | ▓▓▓▓▓▓▓▓ | |
| STREET ADDRESS    CITY, STATE AND ZIP CODE | DATE OF BIRTH | |
| ▓▓▓▓▓▓    Philadelphia, PA 19148 | 8/1/1981 | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Lehigh University | 1000+ | (610) 758-3000 |
| STREET ADDRESS    CITY, STATE AND ZIP CODE | | COUNTY |
| 27 Memorial Drive West    Bethlehem, PA 18015 | | Northampton |
| NAME | TELEPHONE NUMBER (Include Area Code) | |
| | | |
| STREET ADDRESS    CITY, STATE AND ZIP CODE | | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE EARLIEST (ADEA/EPA)    LATEST (ALL) |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ AGE  ☒ RETALIATION  ☐ NATIONAL ORIGIN  ☒ DISABILITY  ☐ OTHER (Specify) | August 2015 - Present  ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I believe that my employer has discriminated against me on the basis of my disability in violation of the ADA, the ADAAA, the Rehabilitation Act and Title VII on the basis of my sex (female) and disability (endometrial cancer). In addition, I was retaliated against as a result of having complained about discrimination.

I was hired by Lehigh University as a Lighting Coordinator and Adjunct Professor in 2008 at the age of 28. I have a Masters in Fine Arts with a specialization in Lighting Design from the University of Wisconsin Madison.

In my position, I was responsible for a wide variety of duties: I directed lighting for at least 200 performances and events a year in three different spaces; designed lighting for performances/events; helped guest lighting designers adapt their designs to Lehigh's venues; taught undergraduate students in the Department of Theatre; mentored and supervised students and technicians; and maintained lighting budgets, systems and inventory. I worked extremely hard, put in long hours, and received positive feedback from my supervisors and coworkers.

In my last performance review, conducted in December 2014, my supervisor Joshua Kovar said that I was "an expert in my field," "a strong, highly valued member of the technical services team," and "a solid performer."

| ☒ I want this charge filed with both the EEOC and the State or local Agency, if any, I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| Date 4/24/17    *[signature]* Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

ut:blank

5/2/2

ut:blank

## INFORMATION FOR COMPLAINANTS & ELECTION OPTION
## TO DUAL FILE WITH THE
## PENNSYLVANIA HUMAN RELATIONS COMMISSION

SUSAN RAGUSA _____ vs LEHIGH UNIVERSITY _____

EEOC No. ___530-2017-02484___

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which could affect the outcome of your case.

Complaints filed with PHRC must be filed 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have a chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/ until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights at that time.

**[sign and date appropriate request below]**

I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

*I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S.A.§4904, relating to unsworn falsification to authorities.*

_____ 7/24/17
Signature and Date

*I do not want my charge dual filed with PHRC.*

_____
Signature and Date

Page 33 o:

# Exhibit "B"

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  Susan Ragusa
███████████████

From:  Philadelphia District Office
801 Market Street
Suite 1300
Philadelphia, PA 19107

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2017-02487 | Legal Unit, Legal Technician | (215) 440-2828 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_Jamie R. Williamson_

Jamie R. Williamson,
District Director

05/10/2018
(Date Mailed)

Enclosures(s)

cc:  **LEHIGH UNIVERSITY**
Nancy Conrad, Esq. (For Respondent)
Joyce Collier, Esq. (For Charging Party)