IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN RAGUSA | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 18-3362 |
| | : | |
| LEHIGH UNIVERSITY | : | |

**MEMORANDUM**

**SCHMEHL, J.** /s/ JLS                                                              AUGUST 6, 2019

Plaintiff brought this action, claiming the Defendant improperly terminated her employment because of her disability (endometrial cancer/ adrenal insufficiency) in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA")(Count I), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 *et seq.* ("PHRA") (Count II) and in response for exercising her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA")(Count III). Defendant filed a motion to dismiss the Original Complaint for failure to state a claim. The Court granted the motion, but allowed Plaintiff leave to file a First Amended Complaint which she has since done. Presently before the Court is the Defendant's motion to dismiss the First Amended Complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted in part and denied in part.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the district court should "accept all factual allegations as true, construe the complaint in the

1

light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff need not satisfy any "probability" requirement, but must set forth "more than a sheer possibility" that the defendant's actions give rise to the claim. *Id.*

The First Amended Complaint alleges that the Defendant hired Plaintiff in 2008 as a Lighting Coordinator and Adjunct Professor. (Am. Compl. at ¶ 14.) During Plaintiff's performance review for 2014, Plaintiff's Supervisor, Josh Kovar, told Plaintiff that she was an "expert in her field, a strong, highly valued member of the technical services team, and a solid performer." (*Id.* at ¶ 16.) Plaintiff was diagnosed with endometrial cancer in August, 2015. (*Id.* at ¶ 17.) In September 2015, Plaintiff began to receive hormonal treatment therapy and soon after began to realize she could not work on a full-time basis. (*Id.* at ¶¶ 19-20.) After meeting with Defendant's Human Resources Associate, Linda Lefever, Plaintiff was permitted to work a reduced schedule of 35 hours per week. (*Id.* at ¶¶ 21-22.) However, in December 2015, Plaintiff's treating physician informed her that she

was suffering from "adrenal insufficiency," a side effect from her cancer treatment that caused her to experience extreme fatigue, muscle weakness, and chronic pain. (*Id.* at ¶ 23.) As a result, Plaintiff requested and began an FMLA-approved medical leave of absence on January 4, 2016 which lasted until approximately April, 2016. (*Id.* at ¶24.)

In April 2016, Plaintiff informed Defendant's Benefits Analyst, Kimberly Drey ("Drey"), that she wished to return to work on a part-time basis. (*Id.* at ¶ 25.) On May 26, 2016, Plaintiff presented Drey with a note from her doctor which stated that Plaintiff could return to work on a part-time basis, but could not climb or lift anything over (20) pounds and would be limited to performing "desk work." (*Id.* at ¶ 26.) Plaintiff subsequently returned to work on May 27, 2016 and continued to work until May 31, 2016. (*Id.* at ¶ 27.) On that date, Drey told Plaintiff to go home and wait for Human Resources to permit her to return to work. (*Id.* at ¶ 28.)

On June 10, 2016, Defendant denied Plaintiff's request to return on a part-time basis with the restrictions set forth by her doctor. (*Id.* at ¶ 29.) Defendant told Plaintiff that the Zoellner Arts Center where plaintiff worked as a lighting coordinator, "could not accommodate anything less than a full-duty return to work." (*Id.* at ¶ 30.) Defendant failed to take any further steps at accommodating Plaintiff. (*Id.* at ¶ 31.) At the same time, Defendant did not consider Plaintiff for a vacant teaching position despite her being as equally qualified as the finalists. (*Id.* at ¶ 32.) That position was given to a non-disabled individual. (*Id.* at ¶ 33.)

On June 21, 2016, Plaintiff informed Defendant that she believed Defendant was discriminating against her because of her disabilities. (*Id.* at ¶ 34.) On June 28, 2016, Plaintiff requested that she be able to return to work on a full-time basis with certain restrictions, including not lifting over 20 pounds, not climbing vertical ladders, not standing or walking more than one hour at a time, and having a non-public space in which she could rest during the day. (*Id.* at ¶ 35.)

On June 29, 2016, July 7, 2016 and July 20, 2016, Plaintiff contacted Equal Opportunity Compliance Coordinator Karen Salvemini to inquire about how to file a complaint of discrimination. (*Id.* at ¶¶ 36-37.) On July 18, 2016, Plaintiff met with Drey, Lefever and Judy Zavalydriga ("Zavalydriga"), Director of Employee Relations to discuss returning to work with restrictions. (*Id.* at ¶ 38.) Defendant did not approve of any accommodations for Plaintiff and instead informed her that she would have to have another meeting with her supervisor, Kovar. (*Id.* at ¶ 39.)

On July 22, 2016, Plaintiff filed a formal complaint of disability discrimination against the Defendant. (*Id.* at ¶ 40.) Plaintiff alleges that she was made aware that Defendant did not want her to return to work and become another "Rachel," referring to another of Defendant's employees that was perceived as a burden and a bad employee after being diagnosed with cancer. (*Id.* at ¶ 41.)

On August 4, 2016, Plaintiff met with Drey, Zavalydriga, Kovar and Kovar's supervisor and Defendant's Administrative Director, Andrew Cassano, to discuss Plaintiff's desire to return to work with certain limitations. (*Id.* at ¶ 42.) Following

the meeting, Defendant agreed to allow Plaintiff to return to work on August 8, 2016 with the following restrictions and accommodations:

   a. Working no more than forty (40) hours per week;

   b. Limiting the amount to which she engaged in manual labor;

   c. Devoting all of her time to her duties with Defendant's Zoellner Arts Center as opposed to her teaching responsibilities;

   d. Having a space in the Zoellner Arts Center to periodically rest during the day; and

   e. Having the opportunity to partially work from her home until a suitable resting space was located for Plaintiff at the Zoellner Arts Center;

(*Id.* at ¶ 43.)

The Amended Complaint alleges that Defendant almost immediately refused to honor the agreed-upon accommodations and instead Defendant:

   a. Required Plaintiff to work in excess of forty (40) hours per week;

   b. Required Plaintiff to engage in work which surpassed her physical limitations;

   c. Required Plaintiff to carry out her traditional teaching responsibilities on top of her responsibilities at the Zoellner Arts Center;

   d. Failed to provide Plaintiff with a location on campus in which she could obtain any meaningful rest during the day, forcing Plaintiff, on at least on occasion, to seek rest on a sofa in one of Defendant's public lobbies in front of several strangers;

   e. Indirectly forced Plaintiff to drive home during her lunch break to obtain the required rest, thus depriving Plaintiff of

> both the actual rest she required and a meaningful lunch break;
>
> f. Criticized and reprimanded Plaintiff for working from home while a suitable resting place on campus was being determined; and
>
> g. Criticized and reprimanded Plaintiff for not being able to climb a ladder.

(*Id.* at ¶ 45.)

In addition, Plaintiff alleges that upon her return to work in August, 2016, she was pressured, without justification, to take a medical leave of absence, and apply for long-term disability benefits; repeatedly and inexplicably excluded from meetings that she had been included in prior to being diagnosed with a disability and requiring medical leave; deliberately excluded from a high-profile project for which she had traditionally served as team lead prior to being diagnosed with a disability and requiring medical leave and workplace accommodations; received a lower annual raise than she had received in previous years; unjustifiably and inexplicably denied administrative support from her assistant for certain key events and was told by her supervisor to "shup up" during a weekly staff meeting in a manner in which she had never been spoken to prior to being diagnosed with a disability and requiring medical leave and workplace accommodations. (*Id.* at ¶¶ 46-51.)

On November 9, 2016, Defendant informed Plaintiff that she was being placed on an extended medical leave of absence and that she would be given a period of seven days to apply for long-term disability benefits. (*Id.* at ¶¶ 52-53). Plaintiff applied for and was granted long-term disability benefits through

December 15, 2016, at the expiration of which she was terminated. (*Id.* at ¶¶ 55-56.)

Plaintiff alleges in her claims under the ADA and PHRA that her "actual and/or perceived disabilities were motivating and/or determinative factors in Defendant's discriminatory and retaliatory treatment of Plaintiff…, including subjecting her to a hostile work environment, failing to provide reasonable accommodations for her disabilities, terminating her employment, and failing to hire her into a vacant position for which she was qualified." (*Id.* at ¶ 61.)

Defendant argues Plaintiff's failure to accommodate claims under the ADA are time-barred. The ADA incorporates the powers, remedies, and procedures from Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117(a). Under Title VII, a plaintiff must file a charge of discrimination with the EEOC "within 300 days of an alleged discriminatory act before the plaintiff can initiate a civil suit in federal court." 42 U.S.C. § 2000e-5(e)(1). This 300–day statute of limitations to file an EEOC charge begins at the denial of a request for accommodation.[1]

Plaintiff alleges that she cross-filed a Charge of Discrimination with the EEOC and Pennsylvania Human Rights Commission on April 24, 2017. (Am. Compl. at ¶ 11.) Therefore, the 300-day period commenced 300 days prior to April 24, 2017 on June 28, 2016. Since Plaintiff alleges that Defendant denied her request to return to work on a part-time basis on June 10, 2016, 18 days outside

---

[1] Likewise, "[t]o bring suit under the PHRA, a plaintiff must have first filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination." *Woodson v. Scott Paper Co.*, 109 F. 3d 913, 925 (3d Cir. 1997); 43 Pa. Stat. § 959(a). Thus, any alleged act of discrimination under the PHRA must have occurred no earlier than October 26, 2016, 180 days prior to April 24, 2017.

7

the 300-day period, her claim for a denial of her accommodation request to return to work on a part-time basis is time-barred.

Likewise, with respect to her failure to hire into a vacant position claim, Plaintiff's claim accrued between April, 2016 and June 10, 2016. Since the failure to hire claim accrued prior to June 28, 2016, that claim is also time-barred.

Plaintiff argues that her claim against Defendant for denying her accommodation request to return to work part-time is not time-barred based on the continuing violation theory. Under the continuing violation doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.,* 927 F.2d 1283, 1295 (3d Cir.1991).

Discrete acts of discrimination, however, do not constitute a continuing practice and therefore such acts "cannot be aggregated under a continuing violations theory." See *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061). *O'Connor* provides the following "non-exhaustive list" of discrete acts that independently trigger the limitations period: "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation." *Id.* at 127. "An employer's denial of a request for a reasonable accommodation is a discrete act of discrimination that is an independently actionable unlawful employment practice under the

ADA." *Mercer v. Southeastern Pennsylvania Transit Authority*, 26 F.Supp.3d 432, 442 (E.D. Pa. 2014) aff'd *sub nom. Mercer v. SEPTA*, 608 Fed. Appx. 60 (3d Cir. 2015); 42 U.S.C. § 12112(b)(5)(A); *see also Zankel v. Temple University,* 245 Fed. Appx. 196, 198–99 (declining to apply the continuing violations doctrine and dismissing as untimely plaintiff's claims regarding denials of requests for accommodation that occurred outside of the 300–day time-frame).

Although Plaintiff's claim for denial of her accommodation request to return to work on a part-time basis is time-barred, the Court finds that her second request for the accommodation of returning to work on a full-time basis with certain physical restrictions that was made on June 28, 2016, which defendant allegedly did not respond to for two months and the August 8, 2016 terms that were agreed-upon by Defendant and then allegedly not adhered to by Defendant are not time-barred under the ADA.[2] These are discrete acts of discrimination separate and apart from the denial of Plaintiff's initial request for an accommodation to return part-time.

In her initial request for accommodation, Plaintiff was requesting to return to work on a *part time* basis with a 20 pound lifting restriction and a limitation to deskwork, but in her second request for an accommodation, that was made within the limitations period, Plaintiff was asking to return to work on a *full-time* basis with different limitations (not climbing vertical ladders, not standing or walking for more than one hour at a time, and having nonpublic space in which she could rest during the day). In short, Plaintiff's second request for an

---

[2] These claims would still be barred under the PHRA since they accrued prior to the 180-day cutoff date of October 26, 2016.

accommodation to return to work on a full-time basis with restrictions was not merely a rubber stamp of her first request for accommodation to return to work on a part-time basis and therefore, the fact that the initial request was made outside the limitations period has no bearing on the separate request made inside the limitations period. At the very least, the question of whether a request for an accommodation made within the limitations period is an entirely new request or merely a request for reconsideration of the denial of the request made outside the limitations period is one for a reasonable jury to decide. *Owens-Hart v. Howard University*, 220 F. Supp. 3d 81, 94 (D.D.C. 2016). ("Because these denied requests could constitute new requests for accommodation, rather than requests for reconsideration of a prior denial of accommodation, summary judgment is inappropriate at this juncture.")

      Defendant next argues that the allegations in Plaintiff's First Amended Complaint do not allege a claim under the ADA for a hostile work environment. To state a hostile work environment claim under the ADA, the employee must allege that "(1) [she] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action." *Walton v. Mental Health Ass'n, of Southeastern Pa.*, 168 F. 3d 661, 667 (3d Cir. 1999). The hostility of a work environment must be determined by the totality of the

circumstances. *Harris v. Forklift Sys.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Such circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Defendant does not contend that Plaintiff has failed to satisfy the first or fifth elements. With respect to the second and third elements, Plaintiff alleges in her First Amended Complaint that she was harassed when Defendant refused to offer her any accommodations from the time of her initial request on May 26, 2016 until August, 2016. (Am. Compl. ¶¶ 28-31, 35, 38, 39, 41 and 50); when Defendant delayed responding to her internal complaint of disability discrimination (*Id.* at ¶¶ 42-44); after Plaintiff was finally permitted to return to work in August, 2016 with agreed-upon restrictions, Defendant violated those restrictions by requiring Plaintiff to work in excess of 40 hours per week, was required to engage in physical labor, and was not given a location on campus where she could rest (*Id.* at ¶¶ 44(a)-(d)); when Defendant reprimanded and criticized Plaintiff for requiring rest during the workday (*Id.* at ¶ 44(e)); when Defendant forced Plaintiff to take a medical leave of absence despite the agreement to accommodate her limitations(*Id.* at ¶¶ 45-48); when Defendant reduced Plaintiff's annual raise following her return from medical leave (*Id.* at ¶ 49); when Defendant excluded Plaintiff from meetings that she was traditionally and routinely a part of prior to being diagnosed with a disability and requiring medical leave (*Id.* at ¶ 47); when Defendant excluded Plaintiff from a high-profile project for which she traditionally

served as a team leader prior to being diagnosed with a disability and requiring medical leave (*Id*. at ¶ 48); when Defendant denied Plaintiff administrative support from her own assistant following her August 2016 return to work (*Id*. at ¶ 50); and when Plaintiff was told to "shut up" by her supervisor in front of a group of co-workers, a manner in which she had never been spoken to prior to being diagnosed with a disability and requiring an accommodation (*Id*. at ¶ 51). These allegations certainly satisfy the second and third requirements that plaintiff must allege unwelcome harassment and that the harassment was based on her disability or request for an accommodation.

While it is not clear to the Court at this stage of the proceedings that these allegations of harassment are severe and pervasive enough to have altered her working conditions, the Court notes that courts in this Circuit have "shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive." *Booker v. Nat'l R.R. Passenger Corp.,* 880 F.Supp.2d 575, 582 (E.D.Pa.2012) (DuBois, J.) (citing *Grasty v. World Flavors, Inc.,* No. 11–cv–1778, 2011 WL 3515864, at *9 n. 2 (E.D. Pa. Aug 11, 2011)). Therefore, the Court will deny the motion to dismiss this claim on this basis.The Defendant still has the right to file a motion for summary judgment on this issue after discovery has been completed and a fuller record developed.

Defendant next argues that Plaintiff's claim for disability discrimination under the ADA and PHRA must be dismissed because she has failed to

adequately allege the third element of a prima facie case. i.e. that she suffered an adverse employment action as a result of her disability.

In order to establish a prima facie case for disability discrimination under the ADA and PHRA, the plaintiff must show: "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). "Discrimination under the ADA ... includes failing to make reasonable accommodations for a plaintiff's disabilities." *Id.* Therefore, an employer discriminates when it "does not 'mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer].'" *Id.* (alterations in original) (citing 42 U.S.C. § 12112(b)(5)(A)).

Contrary to Defendant's argument, the allegations in Plaintiff's First Amended Complaint just recited on page 11, *supra*, clearly allow a plausible inference to be drawn that Plaintiff was forced onto medical leave and ultimately terminated because of her disability or need for an accommodation. (Am. Comp. ¶¶ 43-56.) The Court finds that Plaintiff has satisfied the third element for a prima facie case of disability discrimination under the ADA.

**Defendant next argues that Plaintiff's claim for retaliation under the ADA and PHRA must be dismissed for failing to establish a causal link between the protective activity and adverse employment action.**

**To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action. *Weston v. Pennsylvania*, 251 F. 3d 420, 430 (3d Cir. 2001).**

**In her First Amended Complaint, Plaintiff asserts that she engaged in the protected activity of requesting reasonable workplace accommodations and filing an internal complaint of disability discrimination. Defendant contends that Plaintiff's filing of an internal complaint of discrimination on June 21, 2016, is too remote in terms of temporal proximity from the date of her termination on December 15, 2016 to permit the plausible inference that a causal link exists between the filing of her internal complaint and her termination.**

**Our Court of Appeals, however, has stated that temporal proximity is only one factor to consider in deciding whether Plaintiff has established a causal link. The other important factor is the existence of a pattern of antagonism in the intervening period. *See, e.g. Hussein v. UPMC Mercy Hosp.*, 466 Fed. Appx. 108, 112 (3d Cir. 2012) (not precedential). While a pattern of antagonism sufficient to show retaliatory motive need not rise to the level of a hostile work environment claim, *Popko v. Pa. State Milton S. Hershey Med. Ctr.*, 2014 WL 3508077, at \*9 (M.D. Pa. July 14, 2014) (citing *Staffieri v. Nw. Human Servs., Inc.*, No. 12-1612,**

14

2013 WL 2245639, at *8 (E.D. Pa. May 22, 2013)), the employer's alleged antagonism must be consistent and continuous, see Wright v. Shore Mem. Hosp., No. 11-5583, 2013 WL 6080072, at *12 (D.N.J. Nov. 19, 2013) (collecting cases and noting that "[c]ourts in this Circuit permit an inference of causation when there is a consistent, continuous course of discriminatory treatment").

Once again, the Court refers to the allegations of the First Amended Complaint, cited at page 11, *supra* which, at least at this stage of the proceedings, raise a plausible inference of a pattern of antagonism toward Plaintiff from June, 2016 through December, 2016 that was alleged to have been based on her known disability. That recurring pattern throughout this time period is clearly sufficient enough to withstand a motion to dismiss.

Turning to Plaintiff's claim under the FMLA, Plaintiff alleges that Defendant violated her rights "by terminating her employment for her use of and/or request for protected medical leave." (Am. Compl. at ¶ 81.)[3]

To plead an FMLA retaliation claim, a plaintiff must show that: (1) he invoked a right under the FMLA, (2) an adverse employment action resulted thereafter, and (3) there is a causal link between the first two prongs. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-302 (3d Cir. 2012). Defendant argues that Plaintiff has not plead a causal link between the first two elements.

---

[3] Although Defendant argues that Plaintiff has asserted a claim for interference under the FMLA, the Court's reading of the Amended Complaint does not deduce such a claim and any such claim will not be recognized in this case. Indeed, Plaintiff herself alleges that she requested and received from Defendant 12 weeks of FMLA-approved medical leave from January 4, 2016 until April, 2016. (Am. Compl. at ¶ 24.)

**The Amended Complaint alleges that Plaintiff exercised her FMLA-approved leave from January 4, 2016 until April 2016 and that she was terminated on December 15, 2016. Defendant argues that the length of time between the exercise of FMLA-approved medical leave and her termination destroys any causal connection between the two events.**

**However, as noted above, Plaintiff has alleged a prolonged period of antagonism from her return to work in August, 2016, which Plaintiff alleges was, in part, the result of her requiring medical leave. (Am. Compl. at ¶¶ 43-51.) How much of this alleged antagonism can actually be attributed to Plaintiff requesting medical leave can be gleaned through discovery. For now, Plaintiff has raised a plausible inference that the actions allegedly taken by the Defendant may have been the result of retaliation for requesting medical leave and/or returning to work with many restrictions.**

**An appropriate Order follows.**